UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Carl K. Towley, III,　　　　　　　　　　　　　Court File No. 15-cv-2304 (MJD/LIB)

　　　　　　Plaintiff,

　　v.　　　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

Gary L. Tavernetti, et al.,

　　　　　　Defendants.

---

　　　　This matter comes before the undersigned United States Magistrate Judge upon Plaintiff Towley's Motion for Remand, [Docket No. 10], and Defendant Tavernetti's Motion to Dismiss or, alternatively, to Consolidate, [Docket No. 20]. The Honorable Michael J. Davis, United States District Judge for the District of Minnesota, referred the present motions to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). (Orders of Referral [Docket Nos. 18, 24]). The Court held a motions hearing on July 14, 2015, and the Court took the parties' motions under advisement. For reasons discussed herein, the Court recommends **GRANTING** Plaintiff Towley's Motion for Remand, [Docket No. 10], and **DENYING as moot** Defendant Tavernetti's Motion to Dismiss or, alternatively, to Consolidate. [Docket No. 20].

**I.　　BACKGROUND**

　　　　On or about March 25, 2015, Plaintiff Carl K. Towley, III ("Towley" or "Plaintiff") initiated the present case against Defendants Gary L. Tavernetti ("Tavernetti"), Gregory S. Olson ("Olson"), and PowerBlock, Inc., f/k/a IntellBell, Inc. ("PowerBlock") in Steele County District Court, State of Minnesota. (Notice of Removal [Docket No. 1], ¶ 1). Tavernetti removed the

present case to the United States District Court for the District of Minnesota on May 1, 2015. (Notice of Removal [Docket No. 1]).

Towley's declaratory judgment action seeks clarification and determination of PowerBlock's shareholder rights. (Compl. [Docket No. 1-2], ¶ 1). The Complaint details the nature of Towley's partnership with Tavernetti and the formation of IntellBell, Inc., to create fitness products. (Id. ¶¶ 3, 17).[1] However, Towley alleges that Tavernetti's promised investment capital "was not forthcoming and the three men [Tavernetti, Towley, Olson] (along with another investor) were forced to consider other opportunities to salvage Towley's revolutionary fitness invention, the IntellBell selectorized dumbbell." (Id. ¶ 4). Towley alleges that Towley and Olson continued to develop the IntellBell products using proceeds and contacts generated from their new product development company, Intellex, Inc. (Id. ¶ 5).

Significantly, Towley alleges that in 1995, PowerBlock shareholders proposed to make amendments to the 1993 formation documents; Towley and Olson executed the amendments and forwarded a copy to Tavernetti. (Id. ¶¶ 7, 22). Towley alleges that the amendments modified certain provisions concerning rights of first refusal to purchase shares of the company and the process for determining the value of shares. (Id.) Towley alleges that Tavernetti "verbally agreed to and ratified the amendments and thereafter has acted in accordance with them recognizing, for instance, the modified shareholder percentages in the company changed as adjusted by the 1995 amendments and the elimination of any compensation for Tavernetti linked to Towley's salary." (Id. ¶¶ 8, 22). As a result of the foregoing, Towley requests the Court recognize and confirm the 1995 amendments to the 1993 Shareholder Agreement. (Id. ¶ 10, Count I) ("Pursuant to Minn.

---

[1] "Towley, Tavernetti and Olson entered into a Pre-Incorporation Agreement in 1993 whereby they agreed to form a company under Minnesota law called IntellBell, Inc. for the purpose of receiving a license to manufacture, distribute and sell the IntellBell dumbbell invented by Towley and patented thereby by Towley and to otherwise structure the business relationship between them on the terms and conditions set forth therein." (Compl. [Docket No. 1-2], ¶ 17).

2

Stat. § 555.01 et seq., the Court should declare and adjudge that the 1995 Amendments to the Shareholder Agreement were effective in all respects and supersede any inconsistent terms in the 1993 Shareholder Agreement.").

## II. PLAINTIFF TOWLEY'S MOTION FOR REMAND, [DOCKET NO. 10]

Pursuant to 28 U.S.C. § 1447 and Fed. R. Civ. P. 12(h)(3), Towley moves the Court for an order remanding the present case to the Third Judicial District of Minnesota (Steele County District Court). (Pl.'s Mot. for Remand [Docket No. 10]). Towley argues that Tavernetti improperly removed the present case as diversity jurisdiction does not exist. (Id.) Towley argues that the amount in controversy does not exceed $75,000, nor does complete diversity exist among the parties.

In response, Tavernetti argues that Towley has fraudulently joined Olson and PowerBlock as Defendants in the present case as neither has a substantial interest in the relief requested, nor are their interests adverse to Towley's. Tavernetti, somewhat conclusorily, argues that $75,000 is necessarily in controversy: "Tavernetti stands to lose and Towley stands to gain, far more than $75,000 from the results of their dispute about whether Paragraph 2.3.2 of the 1993 agreement has been eliminated." (Def.'s Resp. Mem. [Docket No. 26], at 13). Tavernetti *does* attach a declaration from an accountant that states that depending on *how* Tavernetti's shares of PowerBlock are valued (i.e., whether the 1993 agreements or its 1995 amendments control) could mean a "difference of much more than $75,000.01[.]" (Pimentel Decl. [Docket No. 27], ¶ 6).

### A. Standard of Review

Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over cases between citizens of different states in which the amount in controversy exceeds $75,000.

When determining whether an action is removable to federal district court, the Court must, first, "determine whether the complaint is removable on its face." Wiemers v. Good Samaritan Soc'y, 212 F. Supp. 2d 1042, 1045 (N.D. Iowa 2002) (citing McCorkindale v. American Home Assur. Co./A.I.C., 909 F. Supp. 646, 653-55 (N.D. Iowa 1995)). Where, as in the present case, the sufficiency of the amount alleged to be in controversy is questioned, "the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009) (citing Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d 1170, 1173 (8th Cir. 2008)). This rule applies "even in a removed case where the party invoking jurisdiction is the defendant." James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 831 (8th Cir. 2005).

The Court must engage in a "fact intensive" inquiry to determine whether the preponderance of the evidence standard has been met. Bell, 557 F.3d at 959. Speculation on the part of the defendant as to the amount in controversy will not be sufficient to meet the preponderance standard. See, e.g., Thomas v. Southern Pioneer Life Ins. Co., 2009 WL 4894695, *2 (E.D. Ark. Dec. 11, 2009); Nowak v. Innovative Aftermarket Sys., 2007 WL 2454118 (E.D. Mo. Aug. 23, 2007). Jurisdictional facts must be judged at the time of the removal. Dyrda v. Wal-Mart Stores, Inc., 41 F. Supp. 2d 943, 946 (D. Minn. 1999). If "the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." Bell, 557 F.3d at 956 (citing Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir. 2006)). Courts must resolve any doubt as to federal jurisdiction in favor of remand. In re Prempro Prods. Liab. Litig., 591 F.3d 613, 620 (8th Cir. 2010).

"Where . . . the basis for original jurisdiction and, hence removal, is diversity of citizenship, and the face of the complaint fails to exhibit complete diversity, a defendant may avoid remand by demonstrating that the plaintiff fraudulently joined a non-diverse party to avoid removal." McCarthy Bldg. Companies, Inc. v. RSUI Indem. Co., 2011 WL 3847401, at *3 (E.D. Mo. Aug. 30, 2011) (citing In re Prempro Prods., 591 F.3d at 620). "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." Id. (citing Junk v. Terminix Int'l Co., 628 F.3d 439, 445-46 (8th Cir. 2010)). "To prove that a plaintiff fraudulently joined a non-diverse defendant, the defendant seeking removal must prove that the plaintiff's claim against the defendant whose presence destroys diversity has 'no reasonable basis in fact and law.'" Id. (citing Knudson v. Sys. Painters, Inc., 634 F.3d 969, 977 (8th Cir. 2011)).

As the Eighth Circuit has explained:

> [A] proper review should give paramount consideration to the reasonableness of the basis underlying the state claim. Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent. "[I]t is well established that if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Iowa Public Service Co. v. Medicine Bow Coal Co., 556 F.2d 400, 406 (8th Cir. 1977) (emphasis added). However, if there is a "colorable" cause of action-that is, if the state law *might* impose liability on the resident defendant under the facts alleged-then there is no fraudulent joinder. See Foslip Pharmaceuticals, Inc. v. Metabolife Intern., Inc., 92 F. Supp. 2d 891, 903 (N.D. Iowa 2000). As we recently stated in Wiles, ". . . joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." 280 F.3d at 871. Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent.

Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003) (emphases in the original). If a non-diverse party is a real party in interest, "the fact that his joinder was motivated by a desire to

5

defeat federal jurisdiction is not material." Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 404 (8th Cir. 1977) (citations omitted); see also Larsen v. Bank of Am., N.A., No. 11-cv-1775 (MJD/JSM), 2011 WL 6065426, at *4 (D. Minn. July 21, 2011) ("Despite the use of the word 'fraudulent,' a finding of fraudulent joinder does not require a finding of fraudulent intent; rather fraudulent joinder exists if, whatever the plaintiff's motive, their claim against an in-state defendant has no chance of success.").

**B.  Analysis**

The Court begins by evaluating whether complete diversity exists and whether Olson and PowerBlock possess a real "interest" in the present case.

A "real party in interest" is "the person who, under governing substantive law, is entitled to enforce the right asserted, and in a diversity case, the governing substantive law is ordinarily state law[.]" Iowa Pub. Serv. Co., 556 F.2d at 404. The exclusive purpose of the present case is to determine and declare the PowerBlock corporation's shareholders' rights and operative governing documents. As already stated, the present case is one for declaratory judgment. In pertinent part, the Minnesota Declaratory Judgment Act sets forth that, "[w]hen declaratory relief is sought, *all persons* shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Minn. Stat. § 555.11 (emphasis added).

The language of the statute alone indicates that Olson and PowerBlock are real parties in interest and were not fraudulently joined, as they have interests that will inevitably be affected by the Court's impending declaration of rights. Tavernetti, Towley, and Olson are *all* signatories to the 1993 shareholder agreement(s) implicated in the present declaratory judgment action. On the record at the July 14, 2015, motions hearing, both counsel for Olson and counsel for PowerBlock

independently represented that their clients have an interest in the outcome of the present case. Counsel explicitly represented that Olson and PowerBlock intend to act in their own best interests in the present case and that they reserve the right to assert their own, potentially adverse-to-Towley interests during the pendency of the present litigation. C.f., Kuepers Const., Inc. v. State Auto Ins. Co., No. 15-cv-449 (ADM/LIB), 2015 WL 4247153, at *5 (D. Minn. July 13, 2015) ("[A]t the time this action was filed, Kuepers and the Association had already entered into the *Miller-Shugart* agreement whereby Kuepers stipulated to the entry of judgment against it in the underlying construction litigation in exchange for the Association's assurance that it would move to collect the judgment solely from State Auto." Accordingly, the court held that "there is *no risk* that the Association and Kuepers will revert to adverse positions, as can occur in actions where a *Miller-Shugart* agreement is declared unenforceable. . . . [T]he Association agreed that it cannot revert and seek fulfillment of the judgment from Kuepers, even in the event the *Miller-Shugart* agreement is later found to be unenforceable, void, or unreasonable.") (emphasis added). Unlike in Kuepers, both Olson and PowerBlock have the opportunity to assert interests adverse to Towley's in the present declaratory judgment action.

Somewhat analogously, this district has held that a bank had a sufficient interest to be a party in a declaratory judgment action regarding a contract/lien priority *simply because its interests would be affected by the outcome*:

> Alliance seeks a determination of Kinder Morgan's duties and obligations, particularly as those obligations pertain to lien priority for Alliance's propane. Since Wells Fargo's lien priority rights would be affected by a court's determination of which entity had the superior lien, then, like the policyholder in Geisman, Wells Fargo had more than a nominal interest in the outcome of this suit. Therefore, the Court finds that Wells Fargo was not a nominal defendant at the time of removal.

7

Alliance Energy Servs., LLC v. Kinder Morgan Cochin LLC, No. 14-cv-1668 (SRN/TNL), 2015 WL 263691, at *8 (D. Minn. Jan. 21, 2015).

Because the Court finds that neither Olson nor PowerBlock was fraudulently joined in the present case, complete diversity of the parties does not exist in the present case. The Court does not have jurisdiction over the present case pursuant to 28 U.S.C. § 1332(a), and, accordingly, Tavernetti's removal was improper. The Court recommends **GRANTING** Plaintiff Towley's Motion for Remand, [Docket No. 10].[2]

### III. DEFENDANT TAVERNETTI'S MOTION TO DISMISS OR, ALTERNATIVELY, TO CONSOLIDATE, [DOCKET NO. 20]

Because the Court recommends remanding the present case for lack of jurisdiction, the Court recommends **DENYING as moot** Defendant Tavernetti's Motion to Dismiss or, alternatively, to Consolidate, [Docket No. 20].[3]

### IV. CONCLUSION

For the foregoing reasons, and based on all of the files, records, and proceedings here,

**THE COURT HEREBY RECOMMENDS:**

1. That Plaintiff Towley's Motion for Remand, [Docket No. 10], be **GRANTED** and that the present case be remanded to Minnesota's Third Judicial District; and

2. That Defendant Tavernetti's Motion to Dismiss or, alternatively, to Consolidate, [Docket No. 20], be **DENIED as moot**.

Dated: August 10, 2015
s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

---

[2] The Court need not reach the amount in controversy issue; removal was improper regardless of the amount in controversy.

[3] The portion of Tavernetti's motion requesting consolidation with a related suit in this District, Tavernetti v. Towley, 15-cv-1588 (MJD/LIB), is also moot in light of the fact that the Undersigned has recently recommended dismissal of that suit in its entirety.

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.